IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CONNELL DONES            :

                           :

    v.                   :   Civil Action No. DKC 12-3369

                           :

PATRICK R. DONAHOE        :

                           :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case are two motions. Plaintiff Connell Dones filed a motion to proceed *in forma pauperis* to be able to seek reconsideration of this court's denial of appointment of counsel. (ECF No. 9). Second, Defendant Patrick R. Donahoe, Postmaster General of the United States, filed a renewed motion to dismiss or, alternatively, for summary judgment. (ECF No. 19). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion will be granted. Defendant's motion will be granted in part and denied in part.

**I.  Background**

Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

Plaintiff is a male who was sixty (60) years old during the relevant time period. He was an employee of the United States Postal Service ("USPS") from October 1993 to October 5, 2010.[1] This case centers around Defendant's refusal to accommodate Plaintiff's disability by providing a swivel chair which led to Plaintiff's retirement from USPS.

Plaintiff was a mail processor at USPS's Southern Maryland Processing and Distribution Center in Capitol Heights, Maryland. The mail processor job involves working in front of two banks of sorting bins positioned at a right angle to each other. Plaintiff suffered an on-the-job injury in 2000, which was reaggravated in 2006. (ECF No. 1 ¶ 7). Plaintiff's specific injury was Cervicalgia, or neck pain. At some point after the 2000 injury, Plaintiff applied for, and was granted, workers' compensation pursuant to the Federal Employees' Compensation Act ("FECA"), which is administered by the Office of Workers' Compensation Programs ("OWCP") within DOL. OWCP terminated Plaintiff's claim for medical and wage loss benefits effective December 10, 2007 after it determined that Plaintiff's most recent medical records established that his Cervicalgia had

---

[1] Plaintiff, proceeding *pro se*, does not identify his sex or age in his complaint or opposition to Defendant's motion for summary judgment. Plaintiff's characteristics are drawn from the Claim of Discrimination form he filed with the National Equal Employment Opportunity Investigative Services Office ("NEEOISO"), a precursor to this litigation. (ECF No. 19-9).

ceased or was no longer injury-related. (ECF No. 22-10).
Plaintiff apparently attempted to file a recurrence claim on
March 31, 2009, but a May 29, 2009 letter from DOL indicates
that it was not in receipt of this claim. (ECF No. 22-11). On
October 8, 2008, Defendant offered – and Plaintiff accepted – a
modified assignment which stated that his assignments would
require no lifting of more than twenty-five (25) pounds, no
twisting of the neck, and bending and stooping for an average of
four to six hours per day. (ECF No. 22-8).

Plaintiff's immediate supervisors were Mr. Tyrone
Thibodeaux and Mr. Bryan Owens. According to Plaintiff, they
insisted that he work while sitting on a stool with a rest bar.
(ECF No. 22-2 ¶ 7, affidavit of Connell Dones). A stationary
stool did not ameliorate neck twisting, as Plaintiff's work
required him to deposit mail in bins set at ninety-degree angles
from each other. (*See* ECF No. 22-9).

Plaintiff has repeatedly requested from his management
leave to use a swivel chair. The requests were almost
universally denied. This case stems from Plaintiff's September
2010 request. (ECF No. 1 ¶ 14). Plaintiff had previously
requested the use of a swivel chair in August and October 2009,
the latter request resulting in an EEO complaint. (*Id.* ¶ 15).
At the time of the September 2010 request for accommodation,
Plaintiff had two pending EEO complaints against USPS

management, including Messers. Thibodeaux and Owens. (ECF No. 22-1, at 3).

On June 1, 2010, Dr. Thu Nguyen completed United States Department of Labor, Office of Workers' Compensation Programs ("OWCP") Form CA-17, "Duty Status Report." Dr. Nguyen listed Plaintiff's diagnosis due to injury as Cervicalgia, or neck pain. The report states that Plaintiff's work should require no twisting of the neck and that he needs a swivel chair. (ECF No. 22-3).

Mr. Thibodeaux submitted an affidavit in this case. He states that on one or two occasions Plaintiff requested use of a swivel chair. Mr. Thibodeaux "informed Plaintiff that he must request that his physician write a prescription for the swivel chair, and submit the prescription to his case worker at the Department of Labor for approval." (ECF No. 19-14). He states that he never received any medical documentation from Plaintiff's physician or a DOL approval. According to Mr. Thibodeaux, all other postal employees with swivel chairs who worked in Plaintiff's area had the use of those chairs approved by DOL.

According to Plaintiff, Mr. Thibodeaux consistently referred Plaintiff to DOL, stating its approval was necessary. (ECF No. 22-2 ¶¶ 12-13). Plaintiff argues, however, that DOL was not a viable option as it had already terminated his claim

effective December 10, 2007. Plaintiff contends that, in any event, DOL is not the sole authority for granting disability accommodation requests within USPS. Plaintiff alleges that other employees received accommodations without being required to submit their requests to DOL. Plaintiff was unable to learn the full names of these individuals because of privacy issues. (ECF No. 22-1 ¶ 18).

Plaintiff also produced prior physician treatment records indicating the same prescription, namely the necessity of a swivel chair at work. These doctor's notes are dated February 12, 2008, March 18, 2008, and May 28, 2009. (ECF Nos. 22-4 to 22-6). Plaintiff alleges that these prescriptions were substantially similar to the prescriptions submitted by other postal employees who were granted use of swivel chairs. Plaintiff attaches the doctor's notes given to three postal employees. (ECF No. 22-7). By contrast, Plaintiff's requests for a swivel chair were consistently denied with one exception. In 2007 or 2008, Ms. Margaret Boston approved Plaintiff's request. She did not forward the request to DOL, saying it was not necessary because it was a request for an accommodation. Mr. Thibodeaux subsequently removed the chair, insisting that Plaintiff could not use the chair. (ECF No. 22-1 ¶ 10). It is unclear what Ms. Boston's position was with USPS or vis-à-vis Mr. Thibodeaux.

Plaintiff offered to purchase a swivel chair with his own funds but management would not accede. (ECF No. 22-1 ¶ 16). Plaintiff feared that without the swivel chair, he would either reinjure himself or that he would be unable to perform his duties adequately such that he would be disciplined or terminated. Plaintiff asserts that as a result of being forced to work in this unsafe environment, he had no choice but to retire on October 5, 2010. (ECF No. 1 ¶ 18).

## II. Procedural History

Plaintiff filed a claim of discrimination with USPS's Equal Employment Opportunity Office ("EEO") on October 15, 2010. Plaintiff claimed discrimination based on race, color, gender, age, retaliation, and disability when: (1) he was denied a swivel chair in September 2010; (2) he was given a letter of warning after asking for leave pursuant to the Family Medical Leave Act ("FMLA"); and (3) when he was forced to retire. (ECF No. 19-13). USPS issued a final agency decision on October 12, 2012 rejecting his claims. (*Id.*). Plaintiff avers that he received this decision on October 17, 2012. (ECF No. 12, at 3). On November 16, 2012, Plaintiff filed a *pro se* complaint in this court. (ECF No. 1). Plaintiff contends that Defendant's refusal to provide him a swivel chair and subsequent constructive termination of his employment constitute employment discrimination on the basis of sex, age, disability and prior

protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;* the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.;* and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*[2]  On November 19, 2012, Plaintiff moved for appointment of counsel pursuant to 28 U.S.C. § 1915(e).  That motion was denied on March 22, 2013 because Plaintiff had not moved to proceed *in forma pauperis*. (ECF No. 8).  On March 29, 2013, Plaintiff filed a motion to reconsider that decision.  (ECF No. 9).

On April 10, 2013, Defendant filed a motion to dismiss or, in the alternative, summary judgment.  (ECF No. 10).  Defendant argued for dismissal based on Plaintiff's failure to exhaust his claims administratively.  As Plaintiff pointed out in his opposition, Defendant was referring to a set of claims different than those in the present litigation.  (ECF No. 12).  Before the court had a chance to rule, Defendant filed a renewed motion to dismiss for failure to state a claim or, alternatively, for summary judgment on June 14, 2013, addressing the merits of Plaintiff's claims.  (ECF No. 19).  In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the clerk of court mailed a letter to Plaintiff on June 20, 2013, notifying him

---

[2]  Plaintiff has elected not to pursue his claim of discrimination based on denial of FMLA leave.  Plaintiff also has not listed race and color as bases for discrimination in his complaint.

7

that a dispositive motion had been filed and that he was entitled to file opposition material or risk entry of judgment against him. (ECF No. 20). Plaintiff opposed Defendant's motion on July 5, 2013. (ECF No. 22). Defendant did not file a reply.

## III. Motion to Reconsider Appointment of Counsel

Plaintiff's request for appointment of counsel pursuant to 28 U.S.C. § 1915(e) was denied because he failed to move to proceed *in forma pauperis* ("IFP"), the mechanism for appointment of counsel in civil cases. (ECF No. 8). Plaintiff subsequently filed a motion to reconsider that decision, stating that he desired to file an IFP petition, but his then-spouse would not provide her financial information. Because he felt this omission made the form ineligible for consideration, he did not submit it. In his motion for reconsideration, he represents that he has since divorced and requests leave to file the IFP petition for reconsideration of appointment of counsel. (ECF No. 9).

Plaintiff's motion will be granted and he will be permitted to file an IFP petition which will be considered as part of a renewed request for appointment of counsel pursuant to 28 U.S.C. § 1915(e).

**IV.  Defendant's Motion: Standard of Review**

Defendant styles its motions as one to dismiss, or in the alternative, for summary judgment.  Because the parties rely on matters outside the pleadings, the court will construe the motion as one for summary judgment.

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The moving party bears the burden of showing that there is no genuine dispute as to any material fact.  However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *Celotex*, 477 U.S. at 322–23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine dispute for trial.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v.*

*Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (*quoting Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## V.  Analysis

### A.   Sex and Age Discrimination

Plaintiff has alleged unlawful employment discrimination on the basis of sex and age.  A plaintiff may establish a claim for intentional discrimination using two methods.  He may either demonstrate "through direct or circumstantial evidence" that his sex or age "motivated the employer's adverse employment decision," *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004), or he may "proceed under a 'pretext' framework" - commonly referred to as the *McDonnell Douglas* approach - "under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination," *id.* at 285.

Plaintiff has presented no direct evidence that his adverse employment action was based on his sex or age and does not rely on this method in his opposition brief.  Absent direct evidence, Plaintiff must prove his case circumstantially using the pretext

framework established in *McDonnell Douglas*. Under this framework, Plaintiff must first demonstrate a *prima facie* case of disparate treatment, which requires Plaintiff to show that: (1) he is a member of a protected class; (2) he was performing at a level that met his employer's legitimate expectations at the time of the adverse employment action; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside his protected class more favorably. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (Title VII), *aff'd on other grounds*, 132 S.Ct. 1327 (2012); *Hill*, 354 F.3d at 285 (ADEA). Defendant does not dispute that the first two prongs are satisfied.

Plaintiff's claim fails because he has not proffered evidence sufficient to show that he suffered an adverse employment action. An adverse employment action is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 219 (4th Cir. 2007) (*quoting James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Where, as here, an employee is not discharged, such actions typically take the form of a decrease in compensation, demotion, or loss of an opportunity for promotion. *See James*, 368 F.3d at 376.

Plaintiff contends that the denial of a swivel chair resulted in work conditions so intolerable that he was constructively discharged. A constructive discharge is a form of an adverse employment action. *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "In this circuit, the standard for constructive discharge requires a plaintiff to show both intolerable working conditions and a deliberate effort by the employer to force the employee to quit." *Johnson v. Shalala,* 991 F.2d 126, 131 (4th Cir. 1993).

> "Intolerability" is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign. Rather "[i]ntolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt *compelled* to resign," *Bristow [v. Daily Press, Inc.*], 770 F.2d [1251] at 1255 [(4th Cir. 1985)] (emphasis added) — that is, whether he would have had *no choice* but to resign.

*Blistein v. St. John's Coll.,* 74 F.3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998) (emphasis in original).

Deliberateness can be shown "by actual evidence of intent by the employer to drive the employee from the job, or

circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment. *Johnson*, 991 F.2d at 131 (*citing Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981) (stating that the "fact that employees were treated identically rebuts any inference" of constructive discharge)).

Plaintiff has not provided sufficient evidence that he was subjected to objectively intolerable working conditions. Plaintiff was given a modified duty assignment; the denial of a further modification to use a swivel chair does not constitute an intolerable working condition that left Plaintiff with no choice but to resign. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (finding that the plaintiff was not constructively discharged where she alleged that her supervisors yelled at her, told her she was a poor manager, gave her poor evaluations, chastised her in front of customers, and required her to work with an injured back because, even if the plaintiff's allegations were true, these actions were not objectively intolerable).[3]

Furthermore, even if Plaintiff suffered an adverse employment action, he has failed to produce evidence necessary

---

[3] Because Plaintiff has failed to demonstrate objectively intolerable working conditions, it is not necessary to consider whether Defendant's actions were taken with an intent to drive Plaintiff to resign.

to satisfy the final prong of the *prima facie* case. Plaintiff does provide doctor's notes of postal employees who he alleges were given swivel chairs without having to go through DOL. (ECF No. 12-7). However, Plaintiff does not provide any evidence as to how these employees were similarly situated. "The similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). Plaintiff has provided no information as to sex or age of these other postal employees, their supervisors, their job duties, or their physical condition that resulted in them being allowed to use a swivel chair. Consequently, Plaintiff has failed to establish a *prima facie* case of sex or age discrimination.

**B. Disability Discrimination**

Giving Plaintiff's pleadings a liberal reading, he claims two violations of the Rehabilitation Act: (1) wrongful discharge, and (2) failure to accommodate. The *prima facie* case for wrongful discharge is identical to that for Title VII. *See Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). Plaintiff fails to make a *prima facie* case on wrongful discharge for the same reasons as discussed *supra* in the context of his age and sex discrimination claims.

To establish a prima facie case for failure to accommodate, Plaintiff must show: "(1) that he was an individual who had a

disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (*quoting Rhoads*, 257 F.3d at 387 n.11) (alteration in original). "Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 F.App'x 399, 400 (4th Cir. 2005) (*citing* 29 C.F.R. § 1630.2(o)(3)).

Defendant in its motion does not dispute that Plaintiff had a disability and that USPS was on notice of that disability. Furthermore, no party disputes that Defendant refused to implement Plaintiff's accommodation. Therefore, whether Plaintiff's satisfied the *prima facie* case for failure to accommodate turns on whether he could perform the essential functions of mail processor with a reasonable accommodation, *i.e.*, a swivel chair.

Plaintiff bears the burden of establishing his ability to perform the essential functions of his job with a reasonable accommodation. *Tyndall v. Nat'l Educ. Centers, Inc.*, 31 F.3d 209, 213 (4th Cir. 1994). "Reasonable accommodations" are

"[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). "In order to be reasonable, the accommodation must be effective (i.e., it must address the job-related difficulties presented by the employee's disability), and it must allow the employee to attain an 'equal' level of achievement, opportunity, and participation that a non-disabled individual in the same position would be able to achieve." *Fleetwood v. Harford Sys. Inc.*, 380 F.Supp.2d 688, 699 (D.Md. 2005).

Based on the evidence provided, the use of a swivel chair to perform the functions of a mail processor could be a reasonable accommodation for an employee with Cervicalgia such that summary judgment for Defendant is not proper. Defendant contends that Plaintiff was already being provided reasonable accommodations as outlined in the limited duty assignment and "has adduced no evidence that the use of a swivel chair was a further reasonable accommodation necessary to the actual performance of his already modified job assignment." (ECF No. 19-1, at 18-19). This argument seems to ignore the numerous doctor's notes Plaintiff obtained indicating that he was not to twist his neck and should be provided a swivel chair. (*See* ECF

Nos. 22-3 to 22-6). There is a genuine dispute as to whether a swivel chair was a reasonable accommodation for Plaintiff's position, especially in light of the fact that other mail processors were granted such chairs. Defendant makes no argument that a swivel chair would not be a reasonable accommodation, and does not invoke the defense of "undue hardship."

Mr. Thibodeaux's affidavit states that he was never given any medical documentation by Plaintiff. As an initial matter, this affidavit appears to be in conflict with the affidavit Mr. Thibodeaux submitted in connection with USPS's internal investigation, where in response to the question "Were you aware of Complainant's medical condition? If so, when and how were you made aware and what do you believe Complainant's medical condition to be?", he stated "Complainant told me and his *CA17 Medical*." (ECF No. 19-8, at 3). But even accepting that Plaintiff's supervisor truly never received any medical documentation from Plaintiff, that fact would make no difference. Specifically, Defendant's secondary argument is that Plaintiff has failed to establish that "he was denied the swivel chair for any ground other than that he was to first submit a prescription for the chair from his medical provider to the Department of Labor to obtain that entity's approval of such" which Plaintiff failed to do. (ECF No. 19-1, at 19).

Plaintiff's supervisor Mr. Thibodeaux submitted an affidavit that he advised Plaintiff of this requirement each time Plaintiff approached him requesting a swivel chair. (ECF No. 19-14). Similar testimony was provided in Plaintiff's administrative case. (*See* ECF No. 19-13, at 19-20, Final Agency Decision, Case No. 1K-206-0041-10). This all suggests that raising the issue with Plaintiff's supervisors would have been futile, as they would have pointed him to DOL.

Defendant has provided no documents indicating that a disabled postal employee seeking a reasonable accommodation in the form of a swivel chair *must* seek approval from the Department of Labor. It is undisputed that Plaintiff was injured on-the-job in 2000 and applied for financial and medical benefits through the Federal Employees' Compensation Act ("FECA"), a statute administered by DOL-OWCP. Plaintiff was approved and received benefits until December 10, 2007 when OWCP determined that his injuries had "ceased, or are no longer injury-related" based on his most recent medical reports. (ECF No. 22-10).

The fact that Plaintiff no longer had a viable worker's compensation claim does not mean that he is no longer a disabled individual eligible for a reasonable accommodation. It appears that Plaintiff's supervisors may have confused the Department of Labor's workers' compensation programs with the requirements of

the Rehabilitation Act. Their repeated guidance to Plaintiff that he must obtain DOL approval for a reasonable accommodation is unsupported by the record and seemingly goes against USPS's own handbook on the reasonable accommodation process, which envisions most reasonable accommodation requests will be handled internally. United States Postal Service, Handbook EL-307, Reasonable Accommodation, An Interactive Process (Oct. 1, 2008), *available at* http://about.usps.com/handbooks/el307.pdf. The handbook acknowledges that limited duty requests are processed through the mechanisms provided by FECA, but goes on to state that "[n]onetheless, there are circumstances in which an employee in a . . . limited duty . . . assignment can raise issues that warrant referral to the [USPS' Reasonable Accommodation Committee]." *Id.* at 59. One example provided is "[w]hen an employee has an illness or injury that may also qualify as a disability under the Rehabilitation Act and the employee seeks accommodation for that disability." *Id; see also id.* at 7 ("[a]n employee who sustains an on-the-job injury that results in permanent or long-term substantial limitations of a major life activity may be protected by both the Rehabilitation Act and the Federal Employees' Compensation Act."); *Szedlock v. Tenet*, 61 F.App'x 88, 93 (4th Cir. 2003) (finding a work-related injury covered by FECA "quite distinct" from a failure to accommodate claim). The handbook states that an employee can

make a request for accommodation to his supervisor or manager. *Id.* at 9. Such a request starts the "reasonable accommodation process," which requires the supervisor to act promptly and engage the requestor in an informal dialogue. *Id.* In some instances, it is appropriate to refer the request to the Reasonable Accommodation Committee, but notably, the handbook states that "[n]ot all requests for accommodation need to be referred to a RAC. For example, if an employee requests specialized equipment, *such as an ergonomic chair*, there is no need for RAC involvement." *Id.* at 10 (emphasis added). Every time the reasonable accommodation process is activated, USPS instructs its supervisors to engage in a five-step process to determine whether to provide an accommodation. There is no mention in the handbook of requiring approval from OWCP or DOL.

At this stage of the proceedings, with the evidence currently provided, there is a genuine dispute of material fact as to whether providing Plaintiff a swivel chair would have been a reasonable accommodation and summary judgment is not proper on Plaintiff's failure to accommodate claim.

### C. Retaliation

Lastly, Plaintiff alleges that the swivel chair denial and subsequent constructive discharge were retaliation for his prior EEO activity. Under the Rehabilitation Act, to establish a *prima facie* case of retaliation, Plaintiff must show that: (1)

he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action. *See Holland*, 487 F.3d at 218.[4] As to the final prong, Plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). Unlike a discrimination claim, a plaintiff need not establish an "ultimate employment decision" to make out his *prima facie* case; rather, he must show only that the action would be seen as materially adverse through the eyes of a reasonable employee. *Burlington N.*, 548 U.S. at 68. "'Although conduct short of ultimate employment decisions can constitute adverse employment action,' there still must be a 'tangible effect on the terms and conditions of employment.'" *Geist v. Gill/Kardash P'ship*, 671 F.Supp.2d 729, 737 n.6 (D.Md. 2009) (*quoting James*, 368 F.3d at

---

[4] Plaintiff is not clear as to whether his retaliation claim is brought under Title VII or the Rehabilitation Act. Title VII does not protect an employee from retaliation where the protected activity involves an alleged disability. *See Berkner v. Blank*, No. DKC 12-1390, 2013 WL 951562, at *8 (D.Md. Mar. 11, 2013). Although the Rehabilitation Act does not have a specific retaliation provision, it incorporates the remedies applicable under the Americans with Disabilities Act including 42 U.S.C. § 12203(a), which makes it unlawful to retaliate against individuals for making a charge, testifying, assisting, or participating in an investigation, proceeding or hearing regarding charges of disability discrimination. 29 U.S.C. § 794a. Considering Plaintiff is *pro se*, his claim will be construed as alleging a violation of the Rehabilitation Act.

375). Actions like "petty slights, minor annoyances, and simple lack of good manners" are insufficient to support a retaliation claim, even under this lower standard. *Burlington N.*, 548 U.S. at 68. Thus, an action is materially adverse if, from an objective point of view, "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*

Defendant does not dispute that Plaintiff has previously engaged in protected activity, but instead contends that Plaintiff has failed to show that he suffered an adverse employment action even under the lesser standard needed on a retaliation claim.

Defendant's limited argument is unpersuasive. A reasonable jury could find that denial of the swivel chair could constitute a tangible effect on the terms of Plaintiff's employment as a mail processor, such that a reasonable worker would be dissuaded from filing a discrimination claim. Defendant argues that the fact that Plaintiff filed a discrimination claim demonstrates that he was not so dissuaded and that it cannot, as a result, constitute an adverse action. Accepting that argument would eviscerate the anti-retaliation protection; an employer could always argue that the fact that the employee filed the claim is proof that he was not dissuaded from making a charge of

discrimination.  This would turn *Burlington Northern*'s lesser standard for retaliation claims into a nullity.

Finally, Defendant argues that even if Plaintiff has established a *prima facie* case on retaliation, he has failed to show that Defendant's legitimate, non-discriminatory reason for that denial was pretext.  As discussed *supra*, however, there is sufficient doubt as to whether obtaining a DOL approval for a swivel chair is necessary to obtain a reasonable accommodation. Therefore, summary judgment is not proper on Plaintiff's retaliation claim.

## VI. Conclusion

For the foregoing reasons, the motion to dismiss or, in the alternative, for summary judgment filed by Defendant will be granted in part and denied in part.  Judgment will be granted in favor of the Defendant for Plaintiff's claims of sex and age discrimination and wrongful discharge on the basis of discrimination.  Defendant's motion will be denied with respect to Plaintiff's claims for retaliation and failure to accommodate his disability.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge