IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CONNELL DONES          :

    v.                        :   Civil Action No. DKC 12-3369

MEGAN J. BRENNAN,
Postmaster General,     :
United States Postal Service[1]

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is a motion for summary judgment filed by Defendant Megan J. Brennan, Postmaster General of the United States ("Defendant"). (ECF No. 66). Also pending is a motion for leave to file a surreply filed by Plaintiff Connell Dones ("Plaintiff"). (ECF No. 78). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted in part and denied in part. Plaintiff's motion for leave to file a surreply will be denied.

---

[1] Defendant notes that Megan J. Brennan succeeded Patrick R. Donahoe as Postmaster General. Accordingly, Ms. Brennan is "automatically substituted as a party." Fed.R.Civ.P. 25(d).

## I. Background

### A. Factual Background

Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party. Additional facts are presented in a prior memorandum opinion. (*See* ECF No. 23, at 1-6).

Plaintiff was an employee of the United States Postal Service ("the USPS") from October 1993 to October 5, 2010. Most recently, Plaintiff worked as a mail processor at the USPS Southern Maryland Processing and Distribution Center in Capitol Heights, Maryland. This job required Plaintiff to "process mail using automated mail processing equipment or manual methods of sortation and distribution." (ECF No. 66-5). Plaintiff suffered on-the-job injuries in 2000 and 2006. (ECF No. 66-4, at 4). One of Plaintiff's injuries stemmed from his use of a "rest-bar," which is a "stool-like piece of equipment ergonomically designed to lift the employee forward as he sits or leans on it and it keeps the employee erect while he or she cases the mail." (ECF Nos. 66-2, at 9-10; 66-4, at 3). Plaintiff's injury was chronic cervicalgia, or neck pain. Plaintiff also suffered from a herniated disk and experienced related back pain. Because of his injuries, Plaintiff's doctor noted that Plaintiff "need[ed] a swivel chair" and should engage in "no twisting of neck." (ECF No. 66-6). Plaintiff was also

unable to stand continuously for the entire eight hour workday. (ECF No. 66-8 ¶ 9).

In light of his disability, in October 2008, Plaintiff was offered a "light-duty assignment." (*Id.*). This assignment indicated, in part, that Plaintiff would not be required to twist his neck. (ECF No. 68-3 ¶ 11). Plaintiff was also provided a rest bar to lean on. (ECF No. 66-2, at 9-10). Despite the limited nature of his new assignment and the use of the rest bar, Plaintiff avers that "it was not possible to avoid twisting [his] neck." (ECF No. 68-3 ¶ 11). Plaintiff contends that, while performing his modified job duties, "he continued to experience injury and pain requiring frequent leave from work." (ECF No. 68-1 ¶ 7).

Plaintiff noticed that other USPS employees were able to perform their tasks while sitting in a swivel chair. On multiple occasions, Plaintiff approached his supervisors to request the use of a swivel chair. (*Id.* ¶ 11). In June 2009, Plaintiff offered to purchase a swivel chair with his own money, but his manager did not approve the request. (ECF No. 68-14). This case stems from Plaintiff's September 2010 request. (ECF No. 1 ¶ 14). Plaintiff's managers continually denied Plaintiff's requests, including the September 2010 request, to use a swivel chair and told Plaintiff that he must submit his request to the Department of Labor. (ECF No. 66-10 ¶ 21).

Following the denial of his September 2010 request, Plaintiff submitted his retirement application on September 20, 2010, which became effective on October 5, 2010. (ECF No. 66-9 ¶ 2).

**B. Procedural History**

Plaintiff filed a claim of discrimination with the USPS's Equal Employment Opportunity Office ("EEO") on October 15, 2010. Plaintiff claimed discrimination based on race, color, gender, age, retaliation, and disability when: (1) he was denied a swivel chair in September 2010; (2) he was given a letter of warning after asking for leave pursuant to the Family Medical Leave Act ("FMLA"); and (3) when he was forced to retire. (ECF No. 19-13). USPS issued a final agency decision on October 12, 2012 rejecting his claims. (*Id.*). Plaintiff avers that he received this decision on October 17, 2012. (ECF No. 12, at 3). On November 16, 2012, Plaintiff filed a *pro se* complaint in this court. (ECF No. 1). Plaintiff contends that Defendant's refusal to provide him a swivel chair and subsequent constructive termination of his employment constitute employment discrimination on the basis of sex, age, disability, and prior protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; the Age Discrimination

in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*[2]

On December 12, 2013, the undersigned granted in part and denied in part Defendant's motion to dismiss or, in the alternative, for summary judgment. (ECF Nos. 23; 24). The court entered judgment against Plaintiff with regard to his claims of age discrimination, sex discrimination, and disability discrimination in the form of wrongful discharge. (ECF No. 24 ¶ 4). Plaintiff's claims for retaliation and failure to accommodate under the Rehabilitation Act remained. (*Id.* ¶ 5). The parties then conducted discovery and attended a settlement conference on March 26, 2015 before Magistrate Judge Charles B. Day.

On May 15, 2015, Defendant filed the pending motion for summary judgment. (ECF No. 66). Plaintiff filed a response in opposition (ECF No. 68), and Defendant replied (ECF No. 72). On July 21, 2015, Plaintiff filed the pending motion for leave to file a surreply. (ECF No. 78). Defendant filed a response in opposition (ECF No. 81), and Plaintiff replied (ECF No. 82).

---

[2] Plaintiff has elected not to pursue his claim of discrimination based on denial of FMLA leave. Plaintiff also has not listed race and color as bases for discrimination in his complaint.

**II. Motion for Summary Judgment**

   **A.   Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In *Liberty Lobby*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Liberty Lobby,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

**B. Analysis**

**1. Discriminatory Failure to Accommodate**

To establish a prima facie case for failure to accommodate, Plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)) (alteration in

original).  "Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 F.App'x 399, 400 (4th Cir. 2005) (citing 29 C.F.R. § 1630.2(o)(3)).

Defendant does not dispute that Plaintiff had a disability and that the USPS was on notice of that disability.  Defendant also does not contest that Plaintiff could have performed the essential functions of his position using the requested swivel chair.  Rather, Defendant focuses on the fourth prong of the *prima facie* case, arguing that the USPS provided reasonable accommodations by modifying Plaintiff's job description and providing him a rest bar to use.  (ECF No. 66-2, at 26-27). Defendant contends that these accommodations are sufficient because the law requires only that an employer "provide some reasonable accommodation," not the accommodation the employee "requests or prefers or even the best accommodation."  (*Id.* at 27 (citing *Doak v. Johnson*, 19 F.Supp.3d 259, 274 (D.D.C. 2014))).  Plaintiff counters that the USPS's accommodations were not effective because he was still required to twist his neck to perform the essential functions of his job.  (ECF No. 68-3 ¶ 11).  Plaintiff asserts that the USPS failed to provide a reasonable accommodation, which was the use of a swivel chair, as prescribed by his doctor.

Plaintiff bears the burden of establishing his ability to perform the essential functions of his job with a reasonable accommodation. *Tynall v. Nat'l Educ. Centers, Inc.*, 31 F.3d 209, 213 (4th Cir. 1994). Here, as in her earlier motion, Defendant makes no argument challenging that a swivel chair would have been a reasonable accommodation allowing Plaintiff to perform the essential functions of his job. Plaintiff asserts that he could do his job using a swivel chair. (ECF No. 66-4, at 10). Other employees performing similar work used swivel chairs (ECF Nos. 66-8 ¶ 20; 68-3 ¶¶ 9, 15), and Plaintiff used a swivel chair to perform his job duties "[t]wo or three times." (ECF No. 66-4, at 14). Defendant does not argue that providing a swivel chair would be an "undue hardship," and Plaintiff offered to purchase the chair himself. (ECF No. 68-3 ¶ 18).

Defendant is correct that an employer is not required to provide the employee's preferred accommodation, *Reyazuddin v. Montgomery Cnty., Md.*, 7 F.Supp.3d 526, 549 (D.Md. 2014), *rev'd on other grounds*, 789 F.3d 407 (4th Cir. 2015), but this argument misses a key component of the reasonable accommodation analysis. "'In order to be reasonable, the accommodation must be effective (*i.e.*, it must address the job-related difficulties presented by the employee's disability).'" *Id.* (quoting *Fleetwood v. Harford Sys. Inc.*, 380 F.Supp.2d 688, 699 (D.Md. 2005)). The mere fact that the USPS provided Plaintiff with some accommodations does

9

not relieve it of the responsibility to provide an *effective*, reasonable accommodation. Defendant asserts that the modified job description addressed Plaintiff's disability because it provided for no twisting of his neck. However, the record indicates that Plaintiff was still required to twist his neck despite the purported limitations. (ECF Nos. 66-4, at 10; 68-3 ¶ 11). Even with the use of the rest bar, Plaintiff was required to twist his neck to perform his job. The rest bar was stationary, and Plaintiff's doctor noted that, should Plaintiff be required to sit for his job, he should be provided with a swivel chair to be able to perform his job without twisting his neck. (ECF No. 66-6). In addition, Plaintiff asserts that he had been injured while using a rest bar, further indicating that it was not an effective, reasonable accommodation for his disability. (ECF No. 66-4, at 3).

The fact that Plaintiff could, at least to a certain degree, perform his job without a swivel chair does not indicate that the accommodations provided were effective, and thus reasonable. As discussed in the preceding paragraphs, the accommodations do not appear to have addressed Plaintiff's job-related difficulties. Defendant relies extensively on a case from the District of Columbia to support her assertion that the USPS provided sufficient accommodation, *Doak*, 19 F.Supp.3d 259, but the situation here differs significantly from the one in

*Doak*.  The employee in *Doak* requested six accommodations based on her doctor's recommendations, and the employer ultimately granted five of them.  *Id.* at 274.  The only requested accommodation the employer in *Doak* did not grant was a request for a modified work schedule because a doctor employed by the defendant deemed it to be not medically necessary.  *Id.*  The district court agreed and determined that the defendant "implemented all the reasonable office accommodations [the plaintiff] requested because of her disability, and only denied [her] requests for telework and a modified schedule because they were unreasonable as a matter of law."  *Id.* at 280.  The court found the scheduling request unreasonable because it was and "open-ended work whenever you want" request and her job required the plaintiff to be present in the office at certain hours.  *Id.* at 277-78.  Here, conversely, a genuine dispute remains as to whether the accommodations offered were effective and reasonable, and Defendant has made no assertion that providing a swivel chair would have been unreasonable or an undue hardship.  This is not a case where the USPS simply failed to provide Plaintiff's preferred accommodation.  Rather, Plaintiff's contention is that the USPS did not provide an effective, reasonable accommodation at all.  Accordingly, *Doak* does little to alter the analysis in the current case, and Defendant's

11

motion for summary judgment will be denied for Plaintiff's discriminatory failure-to-accommodate claim.

   2.  **Retaliatory Failure to Accommodate**

Under the Rehabilitation Act, to establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in a protected activity; (2) his employer acted adversely against him; and (3) the protected activity was causally connected to the adverse action. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). As to the final prong, Plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). Unlike a discrimination claim, a plaintiff need not establish an "ultimate employment decision" to make out his *prima facie* case; rather, he must show only that the action would be seen as materially adverse through the eyes of a reasonable employee. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "'Although conduct short of ultimate employment decisions can constitute adverse employment action,' there still must be a 'tangible effect on the terms and conditions of employment.'" *Geist v. Gill/Kardash P'ship*, 671 F.Supp.2d 729, 737 n.6 (D.Md. 2009) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Actions like "petty slights, minor annoyances, and

12

simple lack of good manners" are insufficient to support a retaliation claim, even under this lower standard. *Burlington N.*, 548 U.S. at 68. Thus, an action is materially adverse if, from an objective point of view, "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*

Defendant's only argument against Plaintiff's *prima facie* case is that the denial of a swivel chair was not an adverse employment action. However, the court has already deemed this argument "unpersuasive." As the undersigned noted in a prior memorandum opinion:

> A reasonable jury could find that denial of the swivel chair could constitute a tangible effect on the terms of Plaintiff's employment as a mail processor, such that a reasonable worker would be dissuaded from filing a discrimination claim. Defendant argues that the fact that Plaintiff filed a discrimination claim demonstrates that he was not so dissuaded and that it cannot, as a result, constitute an adverse action. Accepting that argument would eviscerate the anti-retaliation protection; an employer could always argue that the fact that the employee filed the claim is proof that he was not dissuaded from making a charge of discrimination. This would turn *Burlington Northern*'s lesser standard for retaliation claims into a nullity.

(ECF No. 23, at 23-24). As discussed in the preceding section, there is a genuine dispute whether the accommodations the USPS provided were effective. Plaintiff maintains that he continued

13

to suffer pain due to his disability while performing his job without the requested swivel chair.

Defendant also asserts that, even if Plaintiff has established a *prima facie* case of retaliation, summary judgment is appropriate because Plaintiff has failed to show that Defendant's asserted legitimate, non-retaliatory reason for the refusal to provide a swivel chair was pretext for retaliation. (ECF No. 66-2, at 23-24). Once Plaintiff presents a *prima facie* case, "the burden shifts to the employer to articulate a legitimate, non[retaliatory] reason for the adverse employment action." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). If the defendant meets this burden of production, "the burden shifts back to [the plaintiff] to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* at 285 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

Defendant argues that Plaintiff's supervisors denied Plaintiff's requests for a swivel chair because they honestly believed that Plaintiff was required to make such a request through the Department of Labor. (ECF Nos. 66-2, at 23; 66-10 ¶¶ 19-21). Although it is clear that Plaintiff was not actually required to file a request with the Department of Labor, "'[i]t is the perception of the decisionmaker which is relevant.'"

14

*Holland*, 487 F.3d at 217 (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998)); *see also Tavernier v. Health Mgmt. Assocs., Inc.*, 498 F.App'x 349, 351 (4th Cir. 2012) ("An employer is liable only for discriminating [or retaliating] on grounds that are improper, not for differentiating for reasons that are mistaken."). Here, Plaintiff's supervisors submitted affidavits asserting that they believed Plaintiff was required to file his request with the Department of Labor. (ECF Nos. 66-8 ¶¶ 20-25; 66-10 ¶¶ 19-21). Plaintiff admitted in his deposition that his colleagues who had chairs "said they got the chair[s] from the Department of Labor," and other colleagues "said they were waiting on a response from the Department of Labor." (ECF No. 66-4, at 11). Accordingly, Defendant has met her burden of production that Plaintiff's supervisors, the decisionmakers in this case, believed Plaintiff was required to submit his request to the Department of Labor.

Plaintiff asserts that his supervisors' reason for denying his use of a swivel chair was pretextual because they were incorrect; that is, Plaintiff was not actually required to submit his request to the Department of Labor. (*See* ECF Nos. 66-8 ¶ 23; 66-10 ¶ 20; 68-15, at 2). Although the undersigned previously noted that the USPS's handbook envisions most reasonable accommodation requests, such as Plaintiff's request for a swivel chair, will be handled internally (ECF No. 23, at

15

20), Plaintiff's supervisors aver in affidavits that they were unfamiliar with the handbook and reasonable accommodation procedures at the time of Plaintiff's requests (ECF Nos. 66-8 ¶ 23; 66-10 ¶ 20). Plaintiff's only evidentiary support questioning his supervisors' belief that he was required to file his request with the Department of Labor is an affidavit from one of his supervisors in an earlier EEO proceeding that references the internal reasonable accommodation process. (ECF No. 68-12). This reference, however, does not create a genuine dispute as to whether his supervisors believed Plaintiff was required to go first to the Department of Labor. In fact, although the affidavit indicates that the supervisor was aware of an internal reasonable accommodation process, it also shows that he believed swivel chairs must be authorized by the Department of Labor and did not understand when requests should be referred to the internal process. (*Id.* ¶¶ 3-4). Such confusion supports Defendant's contention that Plaintiff's supervisors believed Plaintiff was required to file a request for a swivel chair with the Department of Labor.

Plaintiff has failed to cast any doubt on the fact that his supervisors believed, albeit mistakenly, that he was required to request a swivel chair from the Department of Labor. *See Holland*, 487 F.3d at 216 (citations and internal quotation marks omitted) ("Once an employer has provided a non-discriminatory

16

explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity."). The evidence in the record demonstrates that Plaintiff's supervisors denied his requests for a swivel chair because of their mistaken belief, not because of a retaliatory motive. Accordingly, summary judgment is proper on Plaintiff's retaliation claims.[3]

**III. Motion to File a Surreply**

Local Rule 105.2(a) states that, "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." The court may permit a surreply when a party would not otherwise have an opportunity to respond to arguments raised for the first time in the opposing party's reply. *See Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003).

Here, Defendant's reply presents no new arguments or facts beyond those included in the motion for summary judgment, and Plaintiff's motion for leave to file a surreply does not assert as such. Rather, it appears that "Plaintiff[] seek[s] merely to re-open briefing on the issues raised." *Interphase Garment*

---

[3] To the extent that Plaintiff's claim for retaliatory constructive discharge remains, Defendant's motion for summary judgment will be granted. As the undersigned articulated in a prior memorandum opinion, "Plaintiff has not provided sufficient evidence that he was subjected to objectively intolerable working conditions" rising to the level of constructive discharge. (ECF No. 23, at 14).

17

*Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 467 (D.Md. 2008). Plaintiff has had sufficient opportunity to present his arguments in response to two separate motions for summary judgment. Accordingly, Plaintiff's motion for leave to file a surreply will be denied.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted in part and denied in part. Plaintiff's motion for leave to file a surreply will be denied. A separate order will follow.

/s/<br>
DEBORAH K. CHASANOW<br>
United States District Judge